UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
REYNA ROJAS and EDUARDO ROJAS, on
behalf of themselves, and on behalf of their
minor children CARLOS ROJAS and DULCE
ROJAS and LONG ISLAND HOUSING
SERVICES, INC.,[1]

                                        Plaintiffs,          **MEMORANDUM AND ORDER**
                                                             02-CV-3623 (DRH) (MLO)
                - against -

VICTORIA THEOBALD, JASON THEOBALD,
and GREGORY SCHKODA,

                                        Defendants.
------------------------------------------------------------X

**A P P E A R A N C E S :**

**For the Plaintiffs:**
**Law Offices of Frederick Brewington**
50 Clinton Street, Suite 501
Hempstead, New York 11550
By: Wendy Pelle-Beer, Esq.

**For Defendant Victoria Theobald:**
**Vincent F. Siccardi, Esq.**
125-10 Queens Boulevard, Suite 320
Kew Gardens, New York 11415

**For Defendant Gregory Schkoda:**
**Law Offices of Thomas F. Liotti**
600 Old Country Road, Suite 530
Garden City, New York 11530
By: Thomas F. Liotti, Esq.

**HURLEY, Senior District Judge:**

                Presently before the Court are the motions by: (1) defendant Victoria Theobald

for judgment as a matter of law dismissing the verdict entered against her pursuant to Federal

---

        [1] Long Island Housing Services, Inc. was dismissed from the case for lack of standing
pursuant to Rule 50(a).

Rule of Civil Procedure ("Rule") 50(b); (2) plaintiffs Reyna Rojas and Eduardo Rojas, on behalf of themselves and their minor children Carlos and Dulce (collectively, "Plaintiffs"), for judgment as a matter of law against defendants Victoria Theobald and Schkoda pursuant to Rule 50(b); and (3) defendant Gregory Schkoda ("Schkoda") for sanctions pursuant to Rule 11 and counsel fees pursuant to 42 U.S.C. §§ 1988(b) and 3613(c)(2). For the reasons stated below, all three motions are denied.

## *BACKGROUND*

Plaintiff brought this action against defendants Victoria Theobald, Jason Theobald, and Gregory Schkoda (collectively, "Defendants") asserting claims under 42 U.S.C. §§ 1982, 1985 and 1986, the fourteenth amendment, the Fair Housing Act, 42 U.S.C. § 3617 (the "FHA"), and state law. The trial commenced with jury selection on September 25, 2006. Following Plaintiffs' direct case, each of the Defendants moved for judgment as a matter of law pursuant to Rule 50(a) on all counts. (Tr.[2] at 1053-55, 1059, 1075.) The majority of Plaintiffs' claims were either voluntarily discontinued by Plaintiffs or dismissed by the Court. At the conclusion of the trial, only three claims were presented to the jury, viz. alleged violations under the FHA, § 1985, and a claim for private nuisance. On October 23, 2006, the jury returned a verdict finding defendant Victoria Theobald liable on the claim of private nuisance only and awarded compensatory damages as follows: $1,000.00 to Reyna Rojas; $500.00 to Eduardo Rojas; $250.00 to Carlos Rojas; and $250.00 to Dulce Rojas. The jury also awarded $100.00 in punitive damages to Reyna Rojas. Defendants Jason Theobald and Schkoda were found not liable on all counts.

---

[2] References to "Tr." refer to the trial transcript filed in this case.

On October 31, 2006, Victoria Theobald filed a motion to set aside the private nuisance verdict pursuant to Rule 50(b). On November 16, 2006, Schkoda filed a motion for attorneys' fees pursuant to Rule 11 and counsel fees and costs pursuant to 42 U.S.C. §§ 1988(b) and 3613(c)(2). Thereafter, on December 16, 2006, Plaintiffs cross-moved under Rule 50(b) for judgment notwithstanding the verdict on all counts as against Schkoda and on their FHA claim as against Victoria Theobald. For the reasons that follow, the Court denies the parties' motions.

## DISCUSSION

**I.    *The Court's Jurisdiction Over Plaintiffs' and Victoria Theobald's Rule 50(b) Motions***

Before determining whether the parties are entitled to judgment as a matter of law, the Court must first consider whether the parties' respective motions are procedurally barred. At the time Victoria Theobald filed her motion, i.e., October 31, 2006, Rule 50 provided, in pertinent part, as follows:[3]

> (a) *Judgment as a Matter of Law*.
>
> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.
>
> (b) *Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.* If, for any reason, the court does not grant a motion

---

[3]  Rule 50 was amended effective December 1, 2006, *see* discussion *infra*.

for judgment as a matter of law made at the close of all the
evidence, the court is considered to have submitted the action to
the jury subject to the court's later deciding the legal questions
raised by the motion. The movant may renew its request for
judgment as a matter of law by filing a motion no later than 10
days after entry of judgment-and may alternatively request a new
trial or join a motion for a new trial under Rule 59.[4]

Fed. R. Civ. P. 50(a) and (b).

Rule 50(a) governs a party's initial motion for judgment as a matter of law.  It

provides that such motions may be made "at any time before submission of the case to the jury."

*Id.* 50(a).  Post-verdict renewal of such motions is governed by Rule 50(b).  Pursuant to Rule

50(b) as it existed prior to the amendment, "when a Rule 50(a) motion made during trial is not

granted, the moving party must renew the motion both at the close of the evidence and within ten

days after entry of judgment."  *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir.

1999).  Accordingly, "[t]here is no provision for a [motion for judgment as a matter of law] to be

made for the first time after trial."  *McCardle v. Haddad*, 131 F.3d 43, 50-51 (2d Cir. 1997).

Effective December 1, 2006, Rule 50(b) was "amended to permit renewal of *any*

Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be

made at the close of all the evidence."  Fed. R. Civ. P. 50 advisory committee's note 2006

Amendment (emphasis added).  As further explained:

This change responds to many decisions that have begun to move
away from requiring a motion for judgment as a matter of law at
the literal close of all the evidence.  Although the requirement has
been clearly established for several decades, lawyers continue to
overlook it.  The courts are slowly working away from the formal
requirement.  The amendment establishes the functional approach

---

[4] The parties' respective motions seek judgment as a matter of law; no alternate requests
for a new trial have been made.

4

> that courts have been unable to reach under the present rule and
> makes practice more consistent and predictable.

*Id.* Under the amendment, a motion under Rule 50(b) continues as a "renewal of the preverdict motion." *Id.* That is to say, a district court remains powerless to entertain a Rule 50(b) motion unless the movant has first requested judgment as a matter of law "at any time before the case is submitted to the jury." *Id.* 50(a). However, under the new subsection (b), a movant is no longer required to renew its Rule 50(a) motion at the close of all the evidence.

A.    ***Defendant Victoria Theobald's Motion is Procedurally Proper***

It is undisputed that each defendant made a motion for judgment as a matter of law pursuant to Rule 50(a) at the close of Plaintiffs' case. (Tr. at 1053-55, 1059, 1075.) The parties do not address, however, whether any of the Defendants expressly renewed their motions at the close of all the evidence. After a review of the transcript, it would appear that Defendants did not. (*See id.* at 1399.) Under the current version of Rule 50(b), Victoria Theobald's failure to expressly renew her Rule 50(a) motion at the close of all the evidence would have no bearing on her ability to bring the present motion under subsection (b). Her Rule 50(b) motion, however, was filed prior to December 1, 2006, the effective date of the amendment, and, therefore, presumably the former version of Rule 50 is applicable. Nonetheless, for the reasons that follow, the Court finds that Victoria Theobald's Rule 50(b) motion is procedurally proper.

"The purpose of requiring the moving party to articulate the ground on which [judgment as a matter of law] is sought is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury. The articulation is necessary . . . so that the responding party may seek to correct any overlooked deficiencies in the proof." *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276,

286 (2d Cir. 1998) (internal quotation marks and citation deleted). That purpose was more than adequately served in this case although defense counsel did not expressly move for judgment as a matter of law at the conclusion of all the evidence. To begin with, defense counsel explained its position following the presentation of Plaintiffs' case-in-chief. (Tr. at 1053-75.) At that time, the Court indicated its intent to proceed with Defendants' witnesses and address Defendants' arguments at the end of the day. (*Id.* at 1058, 1075-76.) Thereafter, Defendants called two witnesses. Following their testimony, the Court briefly addressed some of the arguments raised in Defendants' Rule 50(a) motion and the matter was adjourned to the following week. (*See id.* at 1038-1322.) The next week, Defendants called their third and final witness. (*See id.* at 1348.) At the conclusion of his testimony, the defense rested. (*See id.* at 1399.) The pre-summation charge conference was then conducted, during which defense counsel mentioned again the arguments embodied within their Rule 50(a) motions made at the conclusion of Plaintiffs' evidence. (*See id.* at 1406-1517.) Thus, defense counsel provided specific notice of what they perceived to be the deficiencies in Plaintiffs' proof. And, as explained *infra*, the deficiencies cited were not truly factual in nature, but rather concerned the legal conclusions to be drawn based on a given set of undisputed material facts. After the conference, the Court specifically reserved decision on Defendants' motion to dismiss Plaintiffs' private nuisance claim, noting that it would submit the claim to the jury and that if there was verdict in favor of Plaintiffs, it would entertain the appropriate Rule 50 motion. (*See id.* at 1497.) Accordingly, the Court will treat that charge conference colloquy as a motion for judgment as a matter of law made at the conclusion of all of the evidence. *See Campbell v. Liberty Transfer Co.*, No. CV-02-3084, 2005 WL 2002453, at *2 (E.D.N.Y. Aug. 19, 2005) and cases cited therein, *vacated in part upon*

*reconsideration on other grounds*, 2006 WL 3751529 (E.D.N.Y. Dec. 19, 2006). Victoria Theobald's Rule 50(b) motion is therefore procedurally proper.

### B. *Plaintiffs' Rule 50(b) Motion is Procedurally Barred*

Plaintiffs move for judgment as a matter of law on all counts as against defendant Schkoda and on their FHA claim as against Victoria Theobald. Defendants argue that Plaintiffs' motion is barred because Plaintiffs failed to move for judgment as a matter of law "before the case [wa]s submitted to the jury." Fed. R. Civ. P. 50(a). The Court agrees.[5]

Plaintiffs advance several arguments as to why their Rule 50(b) motion is not procedurally defective. First, they claim that "at the close of Plaintiff[s'] case, the Court entertained all motions from all Defense Counsel, including motions pursuant to Rule 50, all of which Plaintiffs opposed." (Pls.' Reply Mem. of Law in Further Supp. of Their Mot. Pursuant to Rule 50 at 1.) The Court fails to see the significance of this statement. Clearly, the fact that Defendants moved under Rule 50(a), or that Plaintiffs voiced opposition thereto, does not evidence Plaintiffs' intent to move for judgment as a matter of law under Rule 50(a).[6]

---

[5] Plaintiffs' Rule 50(b) motion was filed on December 16, 2006, after the effective date of the amendment to Rule 50. The amendment has no bearing on Plaintiffs' motion, however, because Plaintiffs wholly failed to comply with subsection (a) by not moving thereunder "before the case [wa]s submitted to the jury." Fed. R. Civ. P. 50(a). In any event, the Court will hereinafter cite to Rule 50 in its current form.

[6] In support of this argument, Plaintiff cites page 1074 of the transcript, where Plaintiffs noted their opposition to Defendants' motions, and page 1402, where Plaintiffs indicated that they "would like to make [their] Rule 50 motion with regard to defendants' counterclaim" when the parties reconvened for the charge conference. (Tr. at 1402.) Again, the Court fails to see the relevance of this latter page citation as any attempt by Plaintiffs to make a Rule 50(a) motion with regard to defendants' counterclaim would have no bearing on the relief Plaintiffs presently seek, which is based on entirely different grounds. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53-54 (2d Cir. 1993) (noting that because a Rule 50(b) motion "is in reality a renewal of a

Next, Plaintiffs contend that:

> After the Jury returned a verdict, the Court stated that it would
> entertain post trial motions on papers.  Accordingly, the parties
> along with the Court essentially reserved Plaintiffs' right to bring
> the instant motion.  See Rule 6(b)[.]  This grant by the Court was
> well understood by all the parties, thus the filing of a Rule 50(b)
> motion on papers by the Plaintiffs was reserved.  "A mov[]ant may
> renew its request for judgment as a matter of law by filing a
> motion after entry of judgment."  FRCP 50.  Here, in the instant
> matter, there is no judgment and therefore the motion is timely.

(*Id.* at 2.)  Plaintiffs' argument completely misconstrues the meaning of Rule 50.  As noted

above, it is firmly established law that a Rule 50(b) motion will not lie unless it was preceded by

a motion for judgment as a matter of law under Rule 50(a) "before the case [wa]s submitted to

the jury."  Fed. R. Civ. P. 50(a); *see also* Fed. R. Civ. P. 50 advisory committee note (2006);

*McCardle*, 131 F.3d at 51 (noting that party may not move for judgment as a matter of law for

the first time after trial).  Here, Plaintiffs made no such application.  The Court's statement that it

would entertain post-trial motions was clearly limited to those motions filed in compliance with

the Federal Rules of Civil Procedure.  Plaintiffs' citation to Rule 6(b), which permits the Court

under certain circumstances to permit a party to perform an act after the time period to do so has

expired, is misguided, to say the least. The plain language of Rule 6(b) excludes motions made

under Rule 50(b) from the scope of its coverage.  Fed. R. Civ. Proc. 6(b).

Moreover, the fact that a judgment has not yet been entered in this case is of no

moment.  Although Rule 50(b) provides that a "[m]ovant may renew its request for judgment as

---

motion for a directed verdict, it cannot assert new grounds for relief").  Parenthetically, the Court
notes that defendants' counterclaim was not presented to the jury.

a matter of law by filing a motion no later than 10 days after the entry of judgment," that statement presupposes that a motion pursuant to Rule 50(a) has already been made. Accordingly, because Plaintiffs failed to move for judgment as a matter of law "at any time before the case [wa]s submitted to the jury" Fed. R. Civ. P. 50(a), Plaintiff's motion pursuant to Rule 50(b) is barred.

## II.   *Defendant Victoria Theobald's Rule 50(b) Motion is Denied*

### A.   *Standard of Review*

As explained by the Second Circuit:

> The standard governing motions for judgment as a matter of law ("JMOL") pursuant to Rule 50, formerly denominated motions for directed verdict or motions for judgment notwithstanding the verdict is well established. Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor. In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence. Thus, judgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Galdieri-Ambrosini*, 136 F.3d at 289 (citations omitted).

### B.   *Defendant's Arguments*

In support of her Rule 50(b) motion seeking judgment as a matter of law dismissing the jury's verdict awarding Plaintiffs $2,000.00 in compensatory damages and $100.00 in punitive damages on their private nuisance claim, Victoria Theobald presents several

arguments.  The Court addresses these arguments below.

**1.    *There was Sufficient Evidence that Victoria Theobald's Interference With Plaintiffs' Right to Enjoy Their Land was Substantial in Nature***

The elements of a claim for private nuisance are as follows: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." *Copart Indus. v. Consolidated Edison Co. of N.Y.*, 41 N.Y.2d 564, 570 (1977).  Victoria Theobald argues that she is entitled to judgment as a matter of law because the interference she committed, if any, was not substantial in nature.  She contends that the jury's award of $2,000.00 in compensatory damages and $100.00 in punitive damages -- low when compared to the $5 million originally requested -- necessarily indicates that the jury found her actions "annoying" rather than substantial.  In this regard, defendant argues that "if the jury felt that the actions of Victoria Theobald forced them to sell their home, the damages would have been significantly greater."  (Affirmation of Vincent F. Siccardi, dated Oct. 27, 2006, ¶ 24.)

Whether or not an interference is substantial enough to rise to the level of private nuisance is a question of fact for the jury.  *Weinberg v. Lombardi*, 629 N.Y.S.2d 280, 281 (2d Dep't 1995).  To be substantial, the interference must "not be fanciful, slight, or theoretical, but certain and substantial, and must interfere with the physical comfort of the ordinarily reasonable person."  *Bove v. Donner-Hanna Coke Corp.*, 258 N.Y.S. 229, 233 (4th Dep't 1932).

Here, the record is replete with sufficient evidence to permit a rational trier of fact to find that Mrs. Theobald's conduct rose to the level of a substantial interference with Plaintiffs' use and enjoyment of their land.  The Rojases purchased their home in Selden in August 1999. (Tr. at 100.)  There was an easement which provided that the Rojases share their driveway with

the Theobalds.  (Tr. at 444.)  Reyna Rojas testified that on the first day she moved in to her new home, Victoria Theobald screamed at her, telling her that she was not allowed to park her car in the driveway and that she would have to put her car someplace else.  (*Id.* at 106-08.)  As a result, Mr. Rojas created a separate walkway so as to avoid using the driveway.  (*Id.* at 447-48.)

Mrs. Rojas also testified that after placing some branches on her own property, Mrs. Theobald screamed at her that she should not put the branches there and "that [she] should learn how to speak English and that [she] should go back to [her] country."  (*Id.* at 111; *see also id.* at 112.)  Mrs. Rojas thereafter removed the branches and took them to the dump.  (*Id.* at 112-13.)

Mrs. Rojas testified that the Theobalds had four large dogs on their property during the time Plaintiffs lived at their Selden house.  (*Id.* at 121.)  She also testified that one of the dogs approached her while on her own property and placed its paw on her leg, which frightened her so that she ran inside her home.  (*Id.* at 129-31.)  According to Mrs. Rojas, the dogs approached her children "[a]lmost every day" (*id.* at 132), and she and her husband erected a fence to prevent the dogs from entering her property, although one dog still managed to get on her property.  (*Id.* at 136-37.)  Mrs. Rojas testified that she complained to Victoria Theobald about her dogs (*id.* at 149-50), that Mrs. Theobald responded by getting angry (*id.* at 152), and that Mrs. Rojas called the police and told them that her children couldn't go outside because they were afraid of the dogs, (*id.* at 155.)

Mrs. Rojas also testified that she complained to Mrs. Theobald about her placing her garbage in front of Mrs. Rojas' mailbox but that Mrs. Theobald continued to do so.  (*Id.* at 157-168.)

Mr. Rojas testified that after getting into a dispute with the Theobalds about the latter's placement of a sign on Plaintiffs' property, Mrs. Theobald responded by saying "fuckin' Mexicans, when are you going to learn English, when are you going to go back to your country. Why are you here? Why don't you move." (*Id.* at 476.) Dulce Rojas testified that she overheard Victoria Theobald cursing at her Mother and telling her to "go back to [her] country" and that she was "scared because [she] didn't know what was going to happen to [her] [M]om." (*Id.* at 1010.) She also testified that she was scared of the Theobald's dogs. (*Id.* at 1009.)

After reviewing the trial testimony, as well as the relevant case law, the Court finds that Victoria Theobald has failed to demonstrate either the complete absence of evidence, or the existence of an overwhelming amount of evidence in her favor, entitling her to judgment as a matter of law. Instead, the Court finds that the evidence presented at trial was sufficient to permit the jury to find that Victoria Theobald's interference was substantial in nature. *Compare Domen Holding Co. v. Aranovich*, 1 N.Y.3d 117, 124 (2003) (finding that issue of fact existed as to whether conduct of tenant's guest constituted a nuisance where landlord alleged "fact-specific examples of [guest's] outrageous conduct and detail[ed] his use of profanity, racial epithets and threats of violence against [a doorman], his threats to physically harm [another tenant] and his actual use of violence against the superintendent"); *Schwegel v. Chiaramonte*, 772 N.Y.S.2d 379, 381 (2d Dep't 2004) ("The plaintiffs' alleged videotaping of the defendants . . . and their children, raised triable issues of fact as to whether the plaintiffs were liable in nuisance."); *Zimmerman v. Carmack*, 739 N.Y.S.2d 430, 432 (2d Dep't 2002) (finding that plaintiffs adequately pled cause of action for nuisance where they alleged that defendants "repeatedly left their home for long periods of time with an outside stereo playing so loudly that the police were

required to come and disconnect the wires, and that the defendants continuously and intentionally allowed the improper and unlawful accumulation of dog waste and garbage, including soiled diapers and rotting food, immediately adjacent to the plaintiffs' property"). Although defendant makes much of the fact that the jury awarded Plaintiffs "only" $2,000.00 in compensatory damages and $100.00 in punitive damages, defendant proffers no authority whatsoever to support her claim that in order for a jury to find substantial interference, the amount of damages awarded must be significant as well. Accordingly, Victoria Theobald's Rule 50(b) motion is denied on this ground.

### 2. The Cause of Action for Private Nuisance was not Duplicitous With the Section 1985 Claim

Without citation to a single authority, defendant argues as follows:

> The defendants Jason Theobald and Gregory Schkoda were eventually found not liable on the conspiracy claim. Therefore Victoria Theobald should also have been found not liable.
>
> . . . .
>
> The cause of action commenced by the plaintiffs for private nuisance was duplicitous with 42 U.S.C. § 1985 - the conspiracy claim. The jury found Victoria Theobald not liable on the §1985 claim. In fact, the jurors found all 3 defendants not liable on that claim.

(Def.'s Mem. of Law, dated Oct. 27, 2006, at 4-6.) Plaintiffs do not address this argument other than to generally state that "Defendant Theobald misapprehends the Court's statement with regard to the charge of conspiracy and the separate charge of nuisance that were presented to the jury for consideration. Nevertheless, this argument is not one upon which a Rule 50 motion may be granted." (Pls.' Mem. of Law in Opp'n to Def.'s Mot. Pursuant to Rule 50 at 12.)

Defendant's argument appears to be twofold. Proceeding in reverse order, she

13

argues that: (1) it was inconsistent for the jury to find her not liable on the § 1985 conspiracy claim yet liable for private nuisance; and (2) it was inconsistent for the jury to find Jason Theobald and Schkoda not liable for conspiracy yet her liable for private nuisance. Neither of defendant's arguments have merit.

In order to state a claim for conspiracy under § 1985(3), the plaintiff must allege that the conspiracy was motivated by some "class-based animus." *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007). Thus, the Court's charge provided that in order for Plaintiffs to establish a claim under § 1985(3), they needed to demonstrate by a preponderance of the evidence that Defendants deprived Plaintiffs of their right to the enjoyment of their home and property and were motivated "in whole or in part by a dislike or hateful discriminatory attitude toward a specific class of people, here Hispanics." (Tr. at 1663.) When charging on private nuisance, the Court pointed out that there was "no discrimination aspect to" this claim and that "a private nuisance can exist with or without any discriminatory animus." (*Id.* at 1667.) Thus, contrary to defendant's contentions, given that a claim for private nuisance does not require discriminatory animus, these two claims are not duplicitous.

Next, the fact that the jury found Jason Theobald and Gregory Schkoda not liable on the § 1985 conspiracy claim, or even on the private nuisance claim, has no bearing on Victoria Theobald's liability for private nuisance. As just discussed, they are separate claims comprised of different elements. Moreover, there is no conspiracy element to a claim for private nuisance. Accordingly, the Court declines to grant defendant's Rule 50(b) motion on this basis.

### 3. *A Claim for Private Nuisance May Be Predicated on a Defendant's Conduct as Opposed to a Defendant's Use of Land*

Defendant briefly asserts that "the Court expressed reservations about submitting

the private nuisance claim to the jury." (Def.'s Mem of Law, dated Oct. 27, 2006, at 4 (citing Tr. at 1424-24, 1430-31).) In fact, during the charge conference, the Court noted that there was some language in the New York Pattern Jury Instructions which suggested that a claim for private nuisance must emanate from a defendant's use of his or her land, as opposed to arising out of a defendant's conduct. (Tr. at 1423-25.) The language the Court was referring to reads as follows: "While landowners in an organized community must tolerate some damage, annoyance and inconvenience from each other, no one may make an *unreasonable use of his or her land* to the material injury of a neighbor's right to use and enjoy his or her land." N.Y. Pattern Jury Instructions Civil 3:16 (emphasis added).

Plaintiffs' counsel disputed the implication that a private nuisance claim required the unreasonable use of a defendant's land and argued that it was the defendant's conduct, and not the use of his or her property, which controlled. Plaintiff cited *Schwegel*, 772 N.Y.S.2d 379, where the Second Department held that "[t]he plaintiffs' alleged videotaping of the defendants . . . and their children, raised triable issues of fact as to whether the plaintiffs were liable in nuisance." Based on the *Schwegel* case, the Court presented the private nuisance claim to the jury (Tr. at 1497), charging that "a plaintiff seeking to recover damages for private nuisance must show . . . that the conduct of the defendant you are considering interfered with plaintiff's right to use and enjoy his land." (*Id.* at 1667.) Other than defendant's reference to the Court having "reservations" with regard to the private nuisance claim, neither party analyzes this issue in their Rule 50(b) briefs.

Given defendant's complete failure to address this issue in any meaningful way, the Court declines to grant defendant's request for relief under Rule 50(b) on this ground and

instead adheres to its previous ruling. Parenthetically, the Court notes that in *Copart*, the leading New York Court of Appeals case on private nuisance, the Court noted in dictum that "[d]espite early private nuisance cases, which apparently assumed that the defendant was strictly liable, today it is recognized that one is subject to liability for a private nuisance if *his conduct* is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." 41 N.Y.2d at 569 (emphasis added). Such disjunctive language would seem to indicate that a defendant may be liable for a private nuisance based wholly on his or her conduct.

In a later case involving nuisance under New York's Rent Stabilization Code, the Court of Appeals noted that "[t]o constitute a nuisance the *use of property* must interfere with a person's interest in the use and enjoyment of land." *Domen Holding Co.*, 1 N.Y.3d at 123 (citing Restatement Second of Torts § 821D and *Copart*, 41 N.Y.2d 564) (emphasis added). Nonetheless, the Court went on to hold that genuine issues of material fact existed as to whether the *conduct* of the defendant-tenant's guest constituted a nuisance based on allegations that the guest used profanities, made racial epithets, and threatened and actually used violence against others in the building. *Id.* at 124. The Court found that "[t]hese allegations of [the guest's] conduct are of the type that may render the enjoyment of the building especially uncomfortable-- indeed, they may even be threatening and frightening--for other tenants and building staff." *Id.*

After a review of the *Copart* and *Domen Holding Co.* cases, as well as the Second Department's decision in *Schwegel,* the Court adheres to its ruling at trial and finds that the private nuisance claim was properly submitted to the jury.

**III.** *Schkoda's Motion for Sanctions and Attorneys' Fees is Denied*

Over three weeks after the jury reached its verdict in this case, Schkoda filed a motion for Rule 11 sanctions and counsel fees, arguing in part that "[a]ll thirteen causes of action by Long Island Housing Services, Inc. were dismissed before the jury charge [and] [t]en (10) out of thirteen (13) causes of action brought by the remaining plaintiffs were dismissed." (Aff. of Thomas F. Liotti, dated Nov. 15, 2006, ¶ 12.) For the reasons that follow, both motions are denied.

**A.** *Schkoda's Motion for Rule 11 Sanctions is Denied*

In arguing for sanctions, defense counsel contends that the instant action "was brought by experienced counsel who knew that these claims lacked merit, were legally baseless and could not be brought in the absence of bad faith." (*Id.* ¶ 20.) Despite defense counsel's assertions regarding the frivolity of Plaintiffs' claims, counsel did not move for Rule 11 sanctions until *after* the trial was conducted in this case, more than four years after Plaintiffs initiated this action. In addition, at no time during the litigation, did any of the Defendants move to dismiss the Complaint pursuant to Rule 12 or move for summary judgment pursuant to Rule 56. In fact, by the time Schkoda filed the instant Rule 11 motion, all claims against him had already been dismissed or withdrawn.

**1.** *Rule 11(c)(1)(A)*

Rule 11(c)(1)(A) provides that a motion for sanctions "shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R.

Civ. P. 11(c)(1)(A).  This "safe harbor" provision affords protection to a party that voluntarily withdraws its challenged statement after receiving notice of the specific grounds for a potential sanction.  Here, it is undisputed that Schkoda did not comply with Rule 11(c)(1)(A) because he did not serve his Rule 11 motion on Plaintiffs prior to presenting it to the Court.  Ordinarily, failure to comply with Rule 11's "safe harbor" provision requires dismissal of the motion.  *See, e.g.*, *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995).  There is, however,  an added wrinkle in this case.

Schkoda's motion was filed after all of Plaintiffs' claims against him had been dismissed or withdrawn.  Therefore, it was too late for the "safe harbor" provision to have any effect as Plaintiffs could no longer withdraw their challenged claims.  Although not raised by the parties, one could argue that under the circumstances, compliance with Rule 11(c)(1)(A) was unnecessary given the futility of the "safe harbor" provision.  The Court's independent research, however, has revealed that this is not the case.  In *In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003), the Second Circuit noted as follows:

> Although Rule 11 contains no explicit time limit for serving the motion, the "safe harbor" provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission.  The Advisory Committee on Civil Rules contemplated that Rule 11 motions would be deemed untimely if filed too late to permit correction or withdrawal, and the Moore treatise endorses this approach.[7]

---

[7]  "The 21-day, safe-harbor service requirement controls not only the earliest date on which a motion may be filed . . . , it also indirectly controls the last date on which a Rule 11 sanctions motion may be filed.  At the very least, a party must serve its Rule 11 motion before the court has ruled on the pleading, and thus before the conclusion of the case.  Otherwise, the purpose of the 'safe harbor' provision would be nullified.  This has been interpreted to mean that

*Id.* at 89 (citations omitted).

By delaying his motion until after the trial had concluded, Schkoda deprived Plaintiffs' counsel of the right to avoid sanction by withdrawing Plaintiffs' claims. *See Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (holding that defendant gave "up the opportunity to receive an award of Rule 11 sanctions . . . by waiting to file the motion until after the entry of summary judgment"). Accordingly, Schkoda's motion for sanctions pursuant to Rule 11(c)(1)(A) is denied as untimely.[8]

## 2. *Rule 11(c)(1)B)*

Schkoda attempts to circumvent his failure to comply with Rule 11's "safe harbor" provision by arguing that the Court should sanction Plaintiffs pursuant to its inherent power under Rule 11. *See* Fed. R. Civ. P. 11(c)(1)(B). Given defendant's failure to avail himself of the remedies provided for in Rule 11, the Court declines to do so.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court

---

Rule 11 motions must be served at least a full 21 days before the court concludes the case or resolves the offending contention . . . ." 2 Moore's Federal Practice § 11.22[1](c) (3rd ed. 2001) (footnotes omitted).

[8] To the extent Schkoda has moved for "supplemental sanctions" (docket entry 101) barring Plaintiffs' Rule 50 motion, this motion is denied for failure to comply with the "safe harbor" provision of Rule 11 as defendant did not serve it on Plaintiffs 21 days prior to presenting it to the Court.

may safely rely on its inherent power." *Id.* at 50.

This is plainly not a case where the conduct at issue was not covered by one of the other sanctioning provisions. Defendant could have utilized Rule 11 earlier in the litigation. His failure to do so, together with his failure to make *any* dispositive motions in this case, call into question the merits of the argument he now advances. Accordingly, Schkoda's motion for sanctions pursuant to Rule 11(c)(1)(B) is denied.

## IV.    *Schkoda's Motion for Attorneys' Fees and Costs are Denied*

Schkoda moves for an award of attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988(b) and 3613(c)(2). In actions under Sections 1981, 1981a, 1982, 1983, 1985, and 1986, a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. §§ 1988(b). Similarly, under the FHA, a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." *Id.* § 3613(c)(2). The same substantive standards apply under both statutes. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998). As explained by the Second Circuit:

> Fees are regularly awarded to prevailing plaintiffs who obtain some significant measure of relief but not to prevailing defendants. Instead, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. A prevailing defendant need not show bad faith by a plaintiff to be entitled to attorneys' fees, though such a showing provides an even stronger basis for the award.

*Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006); *see also Le-Blanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998) ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees in favor of the defendant.") (citation and internal quotation marks omitted). In making this distinction, the Supreme Court identified "two

strong equitable considerations" for awarding attorneys' fees to a prevailing plaintiff which are "wholly absent" where the defendant prevails. *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978). First, the plaintiff is the chosen instrument to vindicate 'a policy that Congress considered of the highest priority.'" *Id.* (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). Second, when a prevailing plaintiff is awarded attorneys' fees, these fees are assessed "against a violator of federal law." *Id.* at 419.

Here, in moving for attorneys' fees and costs, defense counsel merely cites the two statutes, viz. 42 U.S.C. §§ 1988(b) and 3613(c)(2), and presents argument as to why the *amount* of the fee requested is appropriate. At no point does he address the case law outlined above or indicate why he would be entitled to such relief. Although he makes vague references throughout his motion papers that Plaintiffs' claims were all frivolous, nowhere does he provide any specificity as to why that is the case. There is no explanation as to what Plaintiffs' claims were, the elements thereof, how they were disposed of, or citation to any authority whatsoever. Although Plaintiffs withdrew a number of claims from the Court's consideration and several others were dismissed during the trial, it must be recognized that defendant never moved to either dismiss Plaintiffs' claims as a matter of law or for summary judgment -- actions which might have obviated the need for any trial preparation on these issues. Moreover, a trial was clearly necessary on at least three of Plaintiffs' claims as those claims were presented to the jury. *See LeBlanc-Sternberg*, 143 F.3d at 770 ("[A] court cannot properly consider a claim to be frivolous on its face if it finds that the plaintiff must be allowed to litigate the claim."). Under these circumstances, and based on the papers provided, the Court finds that defendant has failed to establish that Plaintiffs' claims were "frivolous, unreasonable, or groundless" and therefore

declines to grant defendant Schkoda's motion for attorneys' fees and costs under 42 U.S.C. §§ 1988(b) and 3613(c)(2).

## CONCLUSION

For all of the above reasons, both Plaintiffs' and defendant Victoria Theobald's motions for judgment as a matter of law pursuant to Rule 50 are DENIED; Schkoda's motion for sanctions and counsel fees is DENIED.  Upon entry of judgment, the Clerk is directed to close this case.

**SO ORDERED.**

Dated: August 23, 2007
           Central Islip, New York

/s_____
Denis R. Hurley,
United States District Judge